**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ——————————————————— ) | |
| NATIONAL TREASURY EMPLOYEES ) | |
| UNION, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-03078-EGS |
| ) | |
| DONALD J. TRUMP, in his official ) | |
| capacity as President of the United States, ) | |
| and MICHAEL J. RIGAS, in his official ) | |
| capacity as Acting OPM Director ) | |
| ) | |
| *Defendants*. ) | |
| ———————————————————) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................1

LEGAL STANDARD...................................................................................................3

ARGUMENT ...............................................................................................................4

I.      Plaintiff must pursue its claim through the statutory process Congress
        established....................................................................................................4

II.     Plaintiff also fails to establish constitutional jurisdiction. .......................9

        A.      Plaintiff's claim is not ripe. .............................................................9

        B.      Plaintiff cannot establish Article III standing. ...............................12

                1.  Plaintiff has not alleged a cognizable injury caused by the Executive
                    Order. ....................................................................................12

                2.  Any injury Plaintiff might claim is entirely speculative......................15

III.    Even if the Court had jurisdiction, Plaintiff's challenge to the Executive Order
        should be dismissed on the merits. ........................................................16

                1.  Congress expressly authorized the President to create new exceptions
                    to the competitive service. .................................................17

                2.  Plaintiff otherwise fails to state a claim on which relief may be
                    granted...................................................................................18

CONCLUSION.........................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967)...........................................................................................9, 10

*AFGE Council of Locals No. 214 v. FLRA,*
  798 F.2d 1525 (D.C. Cir. 1986) .............................................................................8

*\*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
  929 F.3d 748 (D.C. Cir. 2019).................................................................5, 6, 7, 8

*Am. Petroleum Inst. v. EPA,*
  683 F.3d 382 (D.C. Cir. 2012) ..............................................................................10

*Am. Soc'y For Prevention of Cruelty to Animals v. Feld Ent. Inc.,*
  659 F.3d 13 (D.C. Cir. 2011) ...........................................................................12, 13

*Arch Coal, Inc. v. Acosta,*
  888 F.3d 493 (D.C. Cir. 2018) ................................................................................6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................4

*Ass'n of Civilian Technicians, Inc. v. FLRA,*
  283 F.3d 339 (D.C. Cir. 2002) ...........................................................................7, 8

*Attias v. CareFirst, Inc.,*
  969 F.3d 412 (D.C. Cir. 2020) ...............................................................................4

*Bold All. v. FERC,*
  17-cv-01822 (RJL),2018 WL 4681004 (D.D.C. Sept. 28, 2018) ...................................4

*Browning v. Clinton,*
  292 F.3d 235 (D.C. Cir. 2002) ...............................................................................4

*Bureau of Alcohol, Tobacco & Firearms v. FLRA,*
  464 U.S. 89 (1983).................................................................................................7

*Chamber of Commerce v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ........................................................................18, 19

*Ciba-Geigy Corp. v. EPA,*
  801 F.2d 430 (D.C. Cir. 1986) ..............................................................................11

*City of Tacoma v. Taxpayers of Tacoma,*
   357 U.S. 320 (1958).................................................................5

*Ctr. For Law and Educ. v. Dept. of Educ.,*
   396 F.3d 1152 (D.C. Cir. 2005)..................................................14, 15

*El Dia v. Hernandez Colon,*
   963 F.2d 488 (1st Cir. 1992).....................................................10

*Elgin v. Dep't of Treasury,*
   567 U.S. 1 (2012)..................................................................8

*Equal Rts. Ctr. v. Post Props., Inc.,*
   633 F.3d 1136 (D.C. Cir. 2011)..................................................12, 13

*Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.,*
   28 F.3d 1268 (D.C. Cir. 1994)...................................................13

*Fornaro v. James,*
   416 F.3d 63 (D.C. Cir. 2005)....................................................6

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992)..............................................................18

*Graham v. Ashcroft,*
   358 F.3d 931 (D.C. Cir. 2004)..................................................5, 8

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982)..............................................................13

*Jarkesy v. SEC,*
   803 F.3d 9 (D.C. Cir. 2015).....................................................6, 7

*Khadr v. United States,*
   529 F.3d 1112 (D.C. Cir. 2008)..................................................3

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994)..............................................................3

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)..............................................................12

*Mountain States Legal Found. v. Bush,*
   306 F.3d 1132 (D.C. Cir. 2002)..................................................19

*Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*,
  468 F.3d 826 (D.C. Cir. 2006) .................................................................14

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ...............................................................................9

*Nat'l Treasury Emps. Union ("NTEU") v. Helfer*,
  53 F.3d 1289 (D.C. Cir. 1995) ...............................................................1

*NTEU v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) .........................................10, 13, 14, 16

*Physicians Nat'l House Staff Ass'n v. Fanning*,
  642 F.2d 492 (D.C.Cir.1980) ................................................................8

*Rann v. Chao*,
  154 F. Supp. 2d 61 (D.D.C. 2001) .........................................................4

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
  324 F.3d 726 (D.C. Cir. 2003) ..............................................................11

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ..............................................................................12

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................................12

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ............................................................................5, 6

*Toilet Goods Association v. Gardner*,
  387 U.S. 158 (1967) ..............................................................................11

*Trump v. New York*,
  NO. 20-366, 592 U.S. __ (Dec. 18, 2020) ...........................................10

*U.S. Dep't of Interior, Bureau of Reclamation v. FLRA*,
  23 F.3d 518 (D.C. Cir. 1994) ................................................................7

*United States v. Fausto*,
  484 U.S. 439 (1988) ........................................................................4, 5, 8, 9

*Wood v. AFGE*,
  255 F. Supp. 3d 190 (D.D.C. 2017) ......................................................17

*Woodrow v. FERC*,
     Civil Action No. 20-6 (JEB), 2020 WL 2198050 ...................................................3

*Worth v. Jackson*,
     451 F.3d 854 (D.C. Cir. 2006) .........................................................................12

**Statutes**

5 U.S.C. § 553 .........................................................................................................18

5 U.S.C. § 702 .........................................................................................................18

5 U.S.C. § 706 .........................................................................................................18

5 U.S.C. § 2102 ....................................................................................................1, 2

5 U.S.C. § 2302 ....................................................................................................1, 2

5 U.S.C. § 3302 ....................................................................................2, 10, 17, 19

5 U.S.C. § 3304 .........................................................................................................1

5 U.S.C. § 7105 .........................................................................................................5

5 U.S.C. § 7112 .........................................................................................................7

5 U.S.C. § 7123 ....................................................................................................5, 7

5 U.S.C. § 7511 ....................................................................................................1, 2

5 U.S.C. § 7703 .........................................................................................................5

28 U.S.C. § 1331 .......................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6).........................................................................................4, 17

**Regulations**

Exec. Order No. 10,577, 19 Fed. Reg. 7521 (Nov. 22, 1954) .........................................17

Exec. Order No. 11,521, 35 Fed. Reg. 5311 (Mar. 26, 1970)..........................................17

Exec. Order No. 13,473, 73 Fed. Reg. 56.703 (Sept. 25, 2008) .......................................17

Exec. Order No. 13,562, 75 Fed. Reg. 82,585 (December 27, 2010)............................2, 17

Exec. Order No. 13,750, 81 Fed. Reg. 87,393 (Nov. 29, 2016) .......................................17

Exec. Order  No. 13,843 (July 10, 2018), 83 Fed. Reg. 32,755 (July 10, 2018) ...........2, 17

Exec. Order No. 13,957, 85 Fed. Reg. 67,631 (Oct. 21, 2020) ................................ *passim*

**Other Authorities**

Congressional Research Service, Categories of Federal Civil Service Employment:
    A Snapshot 4, R45635 (March 26, 2019),
    https://fas.org/sgp/crs/misc/R45635.pdf. ........................................................................1

*Our Agencies*, NTEU,
    https://www.nteu.org/who-we-are/our-agencies...........................................................16

*What We Do*, NTEU,
    https://www.nteu.org/who-we-are/what-we-do............................................................15

On October 21, 2020, the President invoked his statutory authority to issue an Executive Order creating a new category of federal employees within the federal Civil Service and directing Executive Branch agencies to identify positions that should be moved into this new category, to be known as Schedule F of the Excepted Service.  Plaintiff National Treasury Employees Union contends that the Executive Order violates a federal statute.  But that claim is beyond the power of federal district courts to adjudicate: the Court lacks jurisdiction for three independently sufficient reasons.  First, this claim must be adjudicated through the administrative process with judicial review, if any, only in one of the courts of appeals.  Second, Plaintiff's challenge is not ripe.  Third, Plaintiff lacks standing to challenge the Executive Order.  Accordingly, the Court should dismiss Plaintiff's claim for lack of jurisdiction.  Even if the Court did have jurisdiction, it is plainly within the President's statutory authority to create new exceptions to the competitive service.

## BACKGROUND

"All civil service employees in the executive branch of the federal government, other than those in the Senior Executive Service, are either in the 'competitive service' or the 'excepted service.'"  *Nat'l Treasury Emps. Union ("NTEU") v. Helfer*, 53 F.3d 1289, 1290 (D.C. Cir. 1995); *see* 5 U.S.C. § 2102.  Most federal employees are in the competitive service; roughly one-third are in the excepted service.  *See* Congressional Research Service, Categories of Federal Civil Service Employment: A Snapshot 4, R45635 (March 26, 2019), *available at* https://fas.org/sgp/crs/misc/R45635.pdf.  Positions in the competitive service are subject to specific provisions for hiring not applicable to the excepted service.  *See, e.g.,* 5 U.S.C. § 3304.  While federal employees generally are entitled to many substantive and procedural protections related to their employment, *e.g., id.* § 2302(a)(2)(B), those restrictions and procedural protections do not apply to the same extent to all those in the excepted service, *compare id.* § 7511(a)(1)(A) ("employee" entitled to certain rights includes individual in competitive service

1

with one year continuous service), *with id.* § 7511(a)(1)(C) ("employee" entitled to those same rights includes individual in excepted service with two years continuous service).  Indeed, by statute, many such restrictions do not apply at all to (among others) certain employees in the excepted service: those (in the excepted service) "whose position has been determined" by "the President," by "the Office of Personnel Management," (OPM) or by "the head of an agency" "to be of a confidential, policy-determining, policy-making or policy-advocating character."  *Id.* § 7511(b)(2); *see also id.* § 2302(a)(2)(B) (defining "covered position").

The "excepted service" includes "positions which are specifically excepted from the competitive service by *or under* statute."  5 U.S.C. § 2102(a)(1)(A) (emphasis added).  Section 3302 provides that the "President may prescribe rules governing the competitive service" and that such rules "shall provide, as nearly as conditions of good administration warrant," for "necessary exceptions of positions from the competitive service."  5 U.S.C. § 3302.  For decades, the Executive Branch has managed the federal civil service by creating such exceptions.  *E.g.*, Exec. Order No.13,843, *Excepting Administrative Law Judges from the Competitive Service*, 83 Fed. Reg. 32, 755 (July 10, 2018); Exec. Order No. 13,562, *Recruiting and Hiring Students and Recent Graduates*, 75 Fed. Reg. 82,585 (December 27, 2010).  Such exceptions enable a more nimble workforce and make the executive branch more responsive to the will of the people.

On October 21, 2020, the President invoked his authority under § 3302 and created a new category of positions "excepted from the competitive service" for "career positions in the Federal service of a confidential, policy-determining, policy-making, or policy-advocating character."  Exec. Order No. 13,957 §§ 1, 4, 85 Fed. Reg. 67,631 (Oct. 21, 2020).  Under this Executive Order, each agency must submit to the Office of Personnel Management (OPM) the specific

positions it proposes should be added to this new category, called Schedule F.  *Id.* § 5(a)(i).[1]  The

Director of OPM must review these submissions and determine which, if any, should in fact be

excepted from the competitive service.  *Id.* § 5(d).

Plaintiff is a national labor union that represents numerous federal employees in specific

agencies.  Compl. ¶ 3.  Before any agency head had submitted any petition to OPM, and before

OPM had made any determination, Plaintiff filed this suit to challenge the Executive Order as

"unlawful and ultra vires" because, in its view, the new exception is not "necessary" or

"warranted by conditions of good administration."  Compl. ¶ 46.  Plaintiff's suit, however, is

beyond federal district courts' jurisdiction to adjudicate it for three independently sufficient

reasons.  First, this claim must be adjudicated through the Federal Labor Relations Authority

(FLRA) under the process set forth by the Federal Service Labor-Management Relations Statute.

Second, Plaintiff's challenge is not ripe.  Third, Plaintiff lacks standing to challenge the

Executive Order.  Accordingly, the Court should dismiss Plaintiff's claim for lack of jurisdiction.

Finally, even if the Court had jurisdiction, it should dismiss for failure to state a claim.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction; there is a presumption *against*

jurisdiction, such that Plaintiff bears the burden of demonstrating jurisdiction by a preponderance

of the evidence.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Khadr v.

United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  A Rule 12(b)(1) motion should be granted

if the complaint fails to allege facts sufficient to establish subject matter jurisdiction or if

evidence external to the complaint refutes the jurisdictional facts alleged.  *See Woodrow v.

FERC*, Civil Action No. 20-6 (JEB), 2020 WL 2198050, at \*4 (D.D.C. May 6, 2020) , *appeal*

---

[1] For positions already excepted from the competitive service by statute, agencies are to publish in the Federal Register those positions that now come within Schedule F.  *See* Creating Schedule F in the Excepted Service, Exec. Order No. 13,957 § 5(a)(ii), 85 Fed. Reg. 67,631 (Oct. 21, 2020).

*filed sub nom. Bohon v. FERC*, No. 20-5203 (D.C. Cir. July 13, 2020).  Courts are "not required . . . to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao,* 154 F. Supp. 2d 61, 64 (D.D.C. 2001).  For the Court to properly exercise jurisdiction, it must have both constitutional jurisdiction consistent with Article III as well as statutory jurisdiction.  *See Attias v. CareFirst, Inc.*, 969 F.3d 412, 416 (D.C. Cir. 2020).

Defendants also move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that Plaintiffs fail to state a claim upon which relief can be granted.  A Rule 12(b)(6) challenge "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Thus, in order to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## ARGUMENT

This Court should dismiss Plaintiff's Complaint for lack of jurisdiction for three independent reasons.  First, Plaintiff's claim must be adjudicated through the administrative process, with any judicial review in a court of appeals, as Congress has directed.  Second, Plaintiff's claim is not yet ripe for judicial review.  Third, Plaintiff has failed to allege any injury adequate to support Article III standing.  Moreover, even if the Court had jurisdiction, the President plainly acted within his statutory authority in creating a new exception to the competitive service.

## I.  Plaintiff must pursue its claim through the statutory process Congress established.

"When Congress provides for exclusive review in a court of appeals, that specific grant of jurisdiction displaces the general federal question statute, 28 U.S.C. § 1331." *Bold All. v.*

*FERC*, 17-cv-01822 (RJL), 2018 WL 4681004, at *4 (D.D.C. Sept. 28, 2018); *see also United States v. Fausto*, 484 U.S. 439, 448–49 (1988) (providing that where a specific statute both provides subject matter jurisdiction and sets out the conditions under which substantive relief may be available, resort should not be made to the general federal question statute).  This rule extends to "all issues inhering in the controversy."  *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958).

Congress has established a detailed statutory scheme for adjudicating disputes that might arise related to federal employment.  The Federal Service Labor–Management Relations Statute (FSLMRS) and the Civil Service Reform Act (CSRA), of which the FSLMRS is a part, together provide a comprehensive "scheme of administrative and judicial review" for resolving both disputes between employees and their federal employers and disputes between unions representing those employees and the federal government.  *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump (AFGE)*, 929 F.3d 748, 752 (D.C. Cir. 2019) (regarding FSLMRS); *see Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004) (regarding CSRA more broadly).  Congress provided, in these statutes, that most federal labor and employment disputes must first be administratively exhausted before the employing agency and the applicable administrative review board—either the Merit Systems Protection Board (MSPB) for employment disputes or the Federal Labor Relations Authority (FLRA) for labor disputes.  Judicial review, if any, is available only in a court of appeals.  *See AFGE*, 929 F.3d at 752 (citing 5 U.S.C. §§ 7105, 7123(a), (c)); *Graham*, 358 F.3d at 934 (citing *Fausto*, 484 U.S. at 448–50); *see also* 5 U.S.C. § 7703(b) (providing for judicial review in the Federal Circuit or other court of appeals).

Statutory schemes like these preclude jurisdiction in the district courts.  *AFGE*, 929 F.3d at 754.  Thus, in *AFGE*, the D.C. Circuit applied the "two-step framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)," to conclude that the union plaintiffs in that case could not challenge in district court three executive orders related to federal employment.

*AFGE*, 929 F.3d at 754, 761.  District courts therefore lack jurisdiction over suits like this one when the intent for exclusive review in the court of appeals is "'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"  *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin*, 510 U.S. at 207, 212).  There can be no question that the FSLMRS and the CSRA readily satisfy the first aspect of the *Thunder Basin* framework.  The D.C. Circuit has held as much repeatedly.  *See AFGE*, 929 F.3d at 755; *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005).

Nor can there be any meaningful dispute that Plaintiff's suit satisfies the second.  "Claims 'will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency.'"  *AFGE*, 929 F.3d at 755 (quoting *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018)).  These three considerations form "general guideposts," rather than "distinct inputs into a strict mathematical formula."  *Jarkesy*, 803 F.3d at 17.  But none of the three supports an exception to the exclusive jurisdiction of the courts of appeals over Plaintiff's claim relating to federal employment and labor relations.

First, the scheme provides for meaningful judicial review.  This is so even if the statutory scheme Congress has established does not allow the unions "to obtain 'pre-implemenation' review of the executive orders or immediate relief barring all agencies from implementing the executive orders."  *AFGE*, 929 F.3d at 755.  Indeed, meaningful judicial review is still available even if the statutory scheme "made it *impossible* to obtain particular forms of review or relief."  *Id.* at 756.  Here, as in *AFGE* itself, Plaintiff and its members can bring their claims through the administrative process "in the context of concrete . . . disputes."  *Id.* at 757.

Plaintiff adverts to just one claim it might raise on its own behalf through the administrative process: the exclusion of Schedule F employees from any existing bargaining unit

6

represented by Plaintiff.  Compl. ¶ 40.  The statute provides Plaintiff with at least one

"'administrative option[]' for challenging the executive order[] before the FLRA, followed by

judicial review."  *AFGE*, 929 F.3d at 757.  If an agency petitions to convert a position to

Schedule F, OPM grants that petition, the agency then fills the Schedule F position, and the

agency then petitions the FLRA to determine whether any Schedule F position must be excluded

from the collective bargaining unit, AFGE can advance its arguments at that time before the

FLRA.[2]  5 U.S.C. § 7112(a).  To be sure, a final decision by the FLRA excluding an employee

from a bargaining unit is not subject to direct judicial review.  5 U.S.C. § 7123(a)(2); *Ass'n of*

*Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 340 (D.C. Cir. 2002).  But Plaintiff may still

obtain "*indirect* judicial review by refusing to bargain, drawing an unfair labor practice charge,

and appealing that charge to the Authority and then to a court of appeals."  *Ass'n of Civilian*

*Technicians*, 283 F.3d at 342.  Such review is still meaningful judicial review.  *See U.S. Dep't of*

*Interior, Bureau of Reclamation v. FLRA*, 23 F.3d 518 (D.C. Cir. 1994) (reviewing agency

refusal to bargain over exclusion of certain employees from bargaining unit).

      Second, and for similar reasons, Plaintiff's claim—that the Executive Order is contrary to

the statute governing federal employment—is plainly not "wholly collateral" to the statutory

review provisions.  Rather, that claim may arise in the context of a specific labor dispute, as set

forth above.  *See AFGE*, 929 F.3d at 759–60 ("This consideration is 'related' to whether

'meaningful judicial review' is available, and the two considerations are sometimes analyzed

together." (quoting *Jarkesy*, 803 F.3d at 22)).

      Third, the issues in this case are plainly within the expertise of the FLRA.  Plaintiff's

central claim is that the Executive Order is inconsistent with the statute governing federal

employees.  The FLRA is—together with the MSPB—the federal authority on matters of federal

---

[2] This hypothetical sequence of events underscores why Plaintiff's claim is not yet ripe for
judicial review.  *See infra* section 2.A.

employment and labor relations.  *E.g.*, *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97 (1983).  Claims that an agency's conduct is inconsistent with the statute governing federal employment are exactly the types of issues that the FLRA is routinely called to review. *AFGE*, 929 F.3d at 760 ("These matters lie at the core of the FLRA's 'specialized expertise in the field of federal labor relations.'"  (quoting *AFGE Council of Locals No. 214 v. FLRA*, 798 F.2d 1525, 1528 (D.C. Cir. 1986)).

Plaintiff's Complaint also suggests that individual employees might challenge the Executive Order if they are removed from their positions after being placed on Schedule F. Compl. ¶¶ 28–29.  The plaintiff in this case, of course, is a union, and not itself an employee. But to the extent the Executive Order adversely affects employees themselves, such claims are similarly channeled through an administrative process with judicial review, if any, in the courts of appeals.  The CSRA establishes a comprehensive scheme for adjudicating all disputes related to the relationship between a federal employer and its covered employees.  That scheme easily satisfies the first prong of the *Thunder Basin* inquiry, as the Supreme Court has squarely held. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–12 (2012).

It also easily satisfies the second prong.  To be sure, some disputes do not warrant, or receive, judicial review.  It is difficult to say, in the abstract, whether any claims related to the Executive Order that an employee *might* raise in the future would be guaranteed judicial review. *See infra* section 2.A (discussing ripeness).  But, in any event, the absence of judicial review for particular disputes is a reflection of Congress's carefully crafted balance between effective and efficient government and employee rights.  *Fausto*, 484 U.S. at 445; *Graham*, 358 F.3d at 934– 35.  It is not an invitation for district courts to exercise jurisdiction, thereby giving employees Congress denied judicial review in the CSRA more recourse than those to whom Congress affirmatively granted it.  *Graham*, 358 F.3d at 934–35; *see also Ass'n of Civilian Technicians*, 283 F.3d at 342 ("Congress has considered the likelihood that some Board decisions in

representation proceedings may evade all judicial review.  Nevertheless, it has rejected attempts to provide review in such cases." (quoting *Physicians Nat'l House Staff Ass'n v. Fanning,* 642 F.2d 492, 499 (D.C.Cir.1980))).  The CSRA's scope is incredibly broad and encompasses nearly any claim related to the employment relationship.  *Fausto*, 484 U.S. at 445–47.  Any statutory claim related to the employment relationship is therefore not wholly collateral to the CSRA procedures.  And the MSPB, which would review any employee disputes before they proceed in a court of appeals, plainly has the relevant expertise, as does the FLRA, to review a claim that agency action is contrary to the statute that governs federal employment.

As precedent squarely holds, the statutory review schemes set forth in the CSRA and the FSLMRS provide the exclusive means for resolving claims like Plaintiff's, and accordingly deny the Court jurisdiction in this case.

## II.    Plaintiff also fails to establish constitutional jurisdiction.

Even if Plaintiff could somehow evade the statutory mechanisms for pursuing its claim that Congress has established, this Court would still lack Article III jurisdiction.  Because no employee has yet been shifted to Schedule F, Plaintiff's claim is patently not ripe for judicial review, and Plaintiff has not identified a sufficiently imminent and non-speculative injury to establish standing.

### A.  *Plaintiff's claim is not ripe.*

This Court lacks jurisdiction because Plaintiff's claim is not ripe.  Ripeness is a component of Article III jurisdictional analysis that prevents courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).  Although it is closely related

9

to the "imminence" requirement of Article III injury, it also has a prudential component that balances "the hardship to the parties" against the "fitness of the issues for judicial decision." *NTEU v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (quoting *Abbott Labs.*, 387 U.S. at 149).[3]  The "fitness" of the issues "depends on whether [the issues are] purely legal, whether consideration of the issues would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012) (internal quotations omitted).  Assuming the issues are not fit for judicial review, "any hardship" caused by the deferral of consideration must be "immediate and significant," given the "institutional interests" at play. *Id.* at 389.

These principles preclude adjudication of Plaintiff's claim here.  The issues in this case are not yet "fit" for judicial review.  The Executive Order did not, on its own, change the status of any employee or position.  Rather, it directed agency heads to review the positions within their agencies and to make recommendations to the Office of Personnel Management to re-schedule designated positions.[4]  When a challenged executive order is "merely a precursor to the later formulation of actual regulations," the "policies that underscore the ripeness doctrine militate strongly against granting discretionary (declaratory) relief," and that is true here.  *El Dia v. Hernandez Colon*, 963 F.2d 488, 496 (1st Cir. 1992).  Unless and until the Office of Personnel Management actually does re-schedule any position, there is no adequate basis to determine whether doing so was "necessary" or "warranted by conditions of good administration."  Compl. ¶ 46; *see* 5 U.S.C. § 3302.

---

[3] As noted, ripeness is closely related to the question of Article III injury.  *See Trump v. New York*, No. 20-366, 592 U.S. __ (Dec. 18, 2020), slip op. at 3–4.  Defendants address that issue in Section II.B.1 below.

[4] Or, in the case of positions already exempt from the competitive service by statute, to publish a notice in the *Federal Register* that such positions would be considered Schedule F positions.  *See* Exec. Order No. 13,957 § 5(a)(ii).  No agency has yet made such a publication.

When Plaintiff filed its Complaint, no position had yet been placed in Schedule F; indeed, even as of the date of this filing, that remains true.  Plaintiff's claim that Schedule F is contrary to law because it is "not necessary" or "warranted by conditions of good administration" is difficult to evaluate in the abstract—the statute plainly contemplates that *some* employees will be excepted from the provisions generally applicable to career civil servants; whether an exception is appropriate—necessary and warranted by conditions of good administration—will inherently turn on the nature of the position at issue and the justifications for the exception.  Although the Executive Order sets forth a general description of the positions to be excepted, it requires OPM to make the determination that a position falls within that description in the first instance—each agency must petition OPM to re-designate certain positions; OPM itself will review and "determine whether to grant" those petitions.  Exec. Order No. § 5(d).  Just as the Supreme Court explained in *Toilet Goods Association v. Gardner*, it is "wiser to require [a plaintiff] to exhaust this administrative process through which the factual basis . . . will certainly be aired and where more light may be thrown on the [agency's] statutory and practical justifications" for any final determination.  387 U.S. 158, 166 (1967).  "Judicial review will then be available, and a court at that juncture will be in a better position to deal with the question of statutory authority."  *Id.*; *see also Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732–33 (D.C. Cir. 2003) ("Judicial review [prior to final agency action] improperly intrudes into the agency's decisionmaking process.  It also squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." (quoting *Ciba-Geigy Corp. v. EPA,* 801 F.2d 430, 436 (D.C. Cir. 1986)).

Nor does postponing judicial review until there is a more concrete action to review place any special hardship on Plaintiff.  The only hardship it would face is the requirement to present its claim in the manner Congress directed.  Plaintiff need not even risk non-compliance, as did the challengers in *Toilet Goods Association*, to avail itself of the prescribed administrative

11

process that could culminate in an opportunity for judicial review of the statutory claim. At this juncture, where no employee represented by Plaintiff, and indeed, no employee at all, has been placed in Schedule F, Plaintiff's claim is not ripe for judicial review, and the Court should dismiss it.

### B. *Plaintiff cannot establish Article III standing.*

The Court lacks jurisdiction for yet another reason: Plaintiff has not established Article III standing. Plaintiff bears the burden to establish the "irreducible constitutional minimum of standing," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)—that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Not any claimed injury satisfies Article III requirements. Rather, the "injury in fact" must be both "concrete and particularized" and also "actual or imminent." *Lujan*, 504 U.S. at 560. Standing, moreover, must be assessed "on the facts as they exist when the complaint is filed." *Worth v. Jackson*, 451 F.3d 854, 860 (D.C. Cir. 2006); *see also Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 (D.C. Cir. 2011) (no standing when insufficient evidence that injury predated complaint).

#### 1. *Plaintiff has not alleged a cognizable injury caused by the Executive Order.*

An organization like Plaintiff generally can sue in its own right, as Plaintiff seeks to do.[5] *See* Compl. ¶ 4. To do so, it must demonstrate an injury to itself, as an organization, caused by the challenged conduct and redressable by the court. Plaintiff evidently intends to assert standing based on its diversion of resources in response to the Executive Order. *See* Compl. ¶¶ 34–42. But an organization's "abstract interest in a problem is insufficient to establish standing, 'no matter how longstanding the interest and no matter how qualified the organization

---

[5] To be sure, Congress can instead channel claims by an organization, just as it may for an individual, through an administrative process, as it has done here. *See supra* Part I.

is in evaluating the problem.'"  *Am. Soc'y For Prevention of Cruelty to Animals v. Feld Ent. Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)). Rather, an organization must demonstrate that "the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'"  *Id.* at 25 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

Plaintiff's evident theory of standing is an ouroboros—a snake eating its own tail. Plaintiff alleges that, in reaction to the Executive Order, it has shifted its resources to "counteract[] the injury from the Executive Order," and that it is thus injured by this diversion of resources.  Compl. ¶ 42, *see also id.* ¶ 26.  But, as the D.C. Circuit has explained, an organization does not have standing if it "and its programs would have been totally unaffected if it had simply refrained from making the re-allocation" of resources.  *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994).  Thus, it is not enough for a plaintiff to allege that it has diverted its resources in response to the challenged conduct.  Rather, a Plaintiff must allege (and, later, demonstrate) that the challenged conduct both is in "direct conflict" with "the organization's mission," *NTEU v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996), and also has itself caused a "concrete and demonstrable injury to the organization's activities," *Havens Realty*, 455 U.S. at 379.  Only if both are satisfied does the inquiry turn to "whether the plaintiff used its resources to counteract that injury."  *Feld Ent.*, 659 F.3d at 25; *see also Equal Rights Ctr.*, 633 F. 3d at 1140.

Although Plaintiff here has alleged that it has diverted its resources in various ways, *see* Compl. ¶¶ 34, 38, 42, it has not alleged that the Executive Order itself has interfered with its activities.  The heart of the *Havens Realty* inquiry, as the D.C. Circuit has explained, is whether the diversion of resources is "designed to counteract the injury" the plaintiff would otherwise endure.  *Equal Rights Ctr.*, 633 F.3d at 1140; *see also Fair Emp. Council*, 28 F.3d at 1277

13

(explaining that the drain on resources referred to in *Havens Realty* "sprang from the organization's need to counteract the defendants' assertedly illegal practices, and thus was simply another manifestation of the injury that those practices had inflicted" on the organizations interests). But Plaintiff has failed to allege any injury independent of its diversion of resources. *E.g.*, Compl. ¶ 26 (describing injury solely as diversion of resources). When a plaintiff alleges only that it has chosen to spend more money on certain activities in anticipation of some possible future harm to its interests, it does not have standing. *See, e.g.*, *Ctr. For Law and Educ. v. Dept. of Educ.*, 396 F.3d 1152, 1161–62 (D.C. Cir. 2005). Rather, such a diversion of resources is "unnecessary alarmism constituting self-inflicted injury." *NTEU*, 101 F.3d at 1430; *see also Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (explaining that "self-inflicted harm . . . does not amount to an injury cognizable under Article III" and that such harm "would not be fairly traceable to the defendant's challenged conduct").

In its Complaint, Plaintiff alleges several changes to its own conduct in reaction to the Executive Order, but it does not allege how the Executive Order, independent of Plaintiff's voluntary diversion of resources, negatively affected or affects Plaintiff's activities. Plaintiff first contends that, because of the order, it now must "expend scarce time and resources to evaluate how the Order will affect its operations and the employees it represents." Compl. ¶ 34; *see also id.* ¶ 35 (staff is "assessing the Order" and "evaluating whether there is any legislative action that can be taken to address it"). Plaintiff alleges that it must now spend time "communicating with Members of Congress and their staffs" about the Executive Order and the possibility of new laws. *Id.* ¶ 35, *see also id.* ¶¶ 36–38 (describing additional lobbying efforts). Plaintiff alleges that it is strategizing how to deal with potential future FLRA proceedings. *Id.* ¶ 40; *see also id.* ¶ 39. And Plaintiff also alleges that it must explain the Executive Order to its "members, the media and the public." *Id.* ¶ 41. If the costs an organization incurs to assess a

14

policy's impact, lobby Congress for new policies, or inform its members or the public of a changed policy were sufficient to establish standing, then any organization could obtain standing to challenge virtually any policy.  That is of course not the law.  *See Ctr. For Law and Educ.*, 396 F.3d at 1161–62.  Because Plaintiff has not alleged an injury to its activities caused by the executive order, Plaintiff has failed to allege sufficient facts to support standing.

Nor could Plaintiff plausibly allege that the Executive Order has interfered with its activities.  Plaintiff pursues its mission to promote federal employees' rights by lobbying, negotiating, and sharing information.  *What We Do*, NTEU, https://www.nteu.org/who-we-are/what-we-do.[6]  But the Executive Order does not, in any way, frustrate Plaintiff's efforts in that regard.  Plaintiff may, and indeed alleges it does, continue to lobby Congress, just as it did before.  Plaintiff may negotiate on behalf of its members, just as it did before.  And Plaintiff may share information with its members, the media, and the public, just as it did before.  To be sure, Plaintiff's activities now have a new target—the Executive Order—but a voluntary shift from lobbying on one issue to lobbying on another is not a judicially cognizable injury, and is not one caused, within the meaning of the standing inquiry, by the challenged conduct.

Because Plaintiff has failed to allege a judicially cognizable injury caused by the challenged conduct, it lacks standing to challenge the Executive Order and this Court lacks jurisdiction.

> *2.  Any injury Plaintiff might claim is entirely speculative.*

For reasons similar to those demonstrating that Plaintiff's claim is not ripe, Plaintiff's asserted injury is also too speculative to establish standing.  Thus, even assuming that the Executive Order might somehow affect Plaintiff's activities in the future in a manner sufficient

---

[6] The Court may consider this evidence external to the complaint to assess the jurisdictional issue without converting the motion to a motion for summary judgment.

to establish Article III injury, whether it will do so it so uncertain as to deny an Article III case or controversy.

Plaintiff alleges that it "represents many employees who perform policy-related work," and that "stripping these employees of their civil service and due process protections is at loggerheads with" that mission.  Compl. ¶ 33.  Perhaps so, perhaps not.  But the key point for present purposes is that the Executive Order has not "stripp[ed]" *any* employees of *any* protections.  Nor has Plaintiff alleged—and nor could it—that either Defendant will do so imminently.  Indeed, over two months have passed since Plaintiff filed this Complaint, and still *no* employee has been assigned to Schedule F, and nor has any agency with employees represented by Plaintiff even submitted a petition for rescheduling pursuant to the Executive Order.[7]  Thus, whether or not Plaintiff's conclusory assertion of conflict with its mission is true, it is not the Executive Order itself that is in conflict with Plaintiff's mission because the Order does not, on its own, actually change the status for any federal employee.

Plaintiff has been down this procedural road before.  In *NTEU v. United States*, the D.C. Circuit faced a challenge by this same plaintiff to the Line Item Veto Act.  101 F.3d 1423.  Like the Executive Order at issue here, the Line Item Veto Act authorized action that might, in some permutations, harm the Plaintiff's interests.  *See id.* at 1430.  But, also like here, no such action had yet been taken.  *Id.*  Thus, even though the plaintiff had diverted its resources in response, the D.C. Circuit readily concluded both that any injury was insufficiently "imminent" and also that any challenge was prudentially unripe.  *Id.* ("For a myriad of reasons, a given President may be disinclined to exercise the item veto power as to government employee benefits.  We do not and cannot know at this point.").  The facts alleged here demand the same result.

---

[7] Plaintiff represents employees at 33 federal entities.  *See Our Agencies*, NTEU, https://www.nteu.org/who-we-are/our-agencies.  As of the date of this filing, only one federal entity has submitted a petition for rescheduling to OPM; that agency, the Office of Management and Budget, is not among those with employees represented by Plaintiff.

**III.   Even if the Court had jurisdiction, Plaintiff's challenge to the Executive Order should be dismissed on the merits.**

As explained above, Plaintiff's claim should be dismissed for lack of jurisdiction.  But to the extent Plaintiff challenges the President's authority to create a new exception to the competitive service, that claim is utterly without merit in any event.[8]  Congress *expressly* authorized the creation, by the President, of exceptions to the competitive service.  To the extent Plaintiff intends some other challenge, the Complaint fails to state a claim.

> *1.   Congress expressly authorized the President to create new exceptions to the competitive service.*

Plaintiff's sole cause of action alleges that the President's Executive Order is *ultra vires*. Compl. at 14 (Count 1).  But presidents have long created exceptions to the generally applicable competitive service requirements, just as the President did here.  This is unsurprising, as Congress has specifically empowered the President to do so.  In 5 U.S.C. § 3302, Congress expressly authorized the President to make "necessary exceptions of positions from the competitive service."  The President expressly invoked that statutory authority in issuing the Executive Order to make "an exception" to the "competitive hiring rules and examinations" and from "the adverse action procedures" for positions of a certain type.  *See* Exec. Order No. 13,957 § 1.

Presidents have invoked this same authority to create Schedule E, for administrative law judges, *see* Exec. Order  No. 13,843 (July 10, 2018), to create Schedule D, for students and recent graduates, *see* Exec. Order  No. 13,562 (December 27, 2010), and to create Schedule A, for attorneys (among others), *see* Exec. Order No. 10,577, 19 Fed. Reg. 7521 (Nov. 22, 1954)

---

[8] Although Plaintiff has named Acting OPM Director Rigas as a Defendant, Plaintiff does not allege any unlawful action that Acting Director Rigas or OPM has taken.  Because Plaintiff has failed to state any claim for relief against OPM or Acting Director Rigas, his dismissal is appropriate.  *See* Fed. R. Civ. P. 12(b)(6); *Wood v. AFGE*, 255 F. Supp. 3d 190, 199 (D.D.C. 2017) (dismissing defendant when there were "no allegations tying him" to the remaining claims).

(citing earlier codification).  Presidents have used this authority to create exceptions for the appointments of veterans, *e.g.*, Exec. Order No. 11,521, 35 Fed. Reg. 5311 (Mar. 26, 1970), military spouses, *e.g.*, Exec. Order No. 13,473, 73 Fed. Reg. 56.703 (Sept. 25, 2008), and Fulbright scholars, Exec. Order No. 13,750, 81 Fed. Reg. 87,393 (Nov. 29, 2016).  The Executive Order challenged here, likewise creating a new exception to the competitive service, is consistent with this long history and express Congressional authorization.  Thus, to the extent Plaintiff challenges the President's authority to create a new category of excepted service, such a claim is utterly without merit and should be dismissed.

>    2.   *Plaintiff otherwise fails to state a claim on which relief may be granted.*

To the extent Plaintiff's claim is that the Executive Order is unlawful in some way, the claim should also be dismissed.  Plaintiff's Complaint adverts to only one supposed legal flaw in the Executive Order: that it "fails to make a meaningful showing" that it is "necessary or supported by good administration principles."  Compl. at 2 (unnumbered paragraph).  The Executive Order, Plaintiff alleges, "provides no details, data, or explanation" why it is necessary. *Id.* ¶ 16, *see also id.* ¶ 19 (Executive Order "provides no details, data, or justification"); *id.* ¶ 46 (Executive Order "is supported by only the broadest generalities").  But Plaintiff has no cause of action to bring such a claim against the President.

A claim that governmental action is ill-explained, or not supported by the explanation given, is of course a familiar one.  In the Administrative Procedure Act (APA), Congress created a cause of action to challenge agency action on the ground that it is "arbitrary," "capricious," "not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitation." *See* 5 U.S.C. §§ 702, 706(2)(A).  But that cause of action is limited to "agency action," and does not extend to actions by the President. *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992). Equally important, the APA's statutory requirements that agencies explain their decisions, *e.g.,* 5 U.S.C. § 553(c), simply do not apply to the President.  Thus, Plaintiff's allegation that the

18

Executive Order is inadequately supported by "details, data, or justification," even assuming that allegation to be true, fails to state a claim.

　　To be sure, courts have, in certain circumstances, entertained claims that the President has acted contrary to statutory limitations. *E.g.*, *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996) (evaluating whether Executive Order violated the National Labor Relations Act). But even assuming such review were available here, Plaintiff has failed to allege "any facts sufficient to support its *ultra vires* claim." *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002). Although Plaintiff plainly disagrees with the policy outlined in the Executive Order, its Complaint "present[s] no more than legal conclusions" with regard to any claimed violation of statute.[9] *Id.* at 1137. Plaintiff alleges only in conclusory fashion that the Executive Order "is not necessary nor is it warranted by conditions of good administration." Compl. ¶ 46. This failure is entirely predictable, as the facts that would be relevant to such a claim—the exception of any particular employee—have not yet arisen. *See supra* Section II.A (concerning ripeness). And as the D.C. Circuit has explained, challenges to Presidential action raise "separation of powers concerns." *Mountain States*, 306 F. 3d at 1136. Given these concerns and the "very broad discretion" afforded the President by Congress, far more than a "bald assertion" of illegality is needed to survive a motion to dismiss. *Id.* at 1137. The Court should dismiss the Complaint because Plaintiff's factual allegations, taken as true, fail to state a claim.

## CONCLUSION

　　The courts of appeals have exclusive jurisdiction over any of Plaintiff's claims related to federal employment and labor relations. Even were that not so, this Court would still lack

---

[9] As just noted above, Plaintiff does allege that the Order is not adequately justified by "details" or "data." But § 3302 does not impose any requirement of explanation or justification, and the APA does not apply.

jurisdiction because Plaintiff's claim is prudentially unripe and because Plaintiff lacks standing. The Court should therefore dismiss Plaintiff's Complaint for lack of jurisdiction.


Dated: January 15, 2021                    Respectfully submitted,

                                           JOHN V. COGHLAN
                                           Deputy Assistant Attorney General

                                           CHRISTOPHER R. HALL
                                           Assistant Branch Director
                                           Federal Programs Branch

                                           /s/ *Michael F. Knapp*
                                           MICHAEL F. KNAPP (Cal. Bar No. 314104)
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street NW
                                           Washington, DC 20005
                                           Phone: (202) 514-2071
                                           Fax: (202) 616-8470
                                           Email: michael.f.knapp@usdoj.gov

                                           *Counsel for Defendants*